OPINION
{¶ 1} Defendant-Appellant, Tom Neville, timely appeals the decision of the Columbiana County Court of Common Pleas that found him guilty of aggravated robbery with a firearm specification and violating a protection order, and sentenced him to maximum, consecutive sentences. Neville's appellate counsel has filed a no-merit brief on appeal and seeks to withdraw as counsel. Neville has not filed a response to his counsel's motion. A review of the record shows that there are no non-frivolous issues which Neville can raise in this appeal. Accordingly, appellate counsel's motion to withdraw is granted and the trial court's decision is affirmed.
 {¶ 2} On November 24, 2006, a man robbed a convenience store in Wellsville, Ohio, at gunpoint. Present at that time was the store owner, her daughter, the store clerk, her friend, and another customer. The customer was a man who lived across the street from the store. The robber was wearing a mask, a black coat, and held a black gun. The witnesses all testified that he wore glasses and had a mustache, which were visible through the mask. The robber spoke to the clerk by name as she gave him money from the cash register. She recognized him and saw him run into the house across the street where the customer lived. Upon returning to the store, the customer confirmed that the robber was his friend, Tom Neville.
 {¶ 3} The police were called and quickly arrived at the scene. They then surrounded the house across the street and demanded that Neville come outside. When he did, he was arrested. The police then obtained the homeowner's consent to search the house and found a mask, black coat, and gun, all of which were identified as being worn and used by the robber. Neville's girlfriend then told the police that he had stashed the money he robbed in her pants and turned that money over to the police. After Neville's arrest, it was discovered that he was the subject of a protective order which forbade him from possessing a firearm.
 {¶ 4} Neville was indicted for aggravated robbery with a firearm specification and violation of a protective order on December 21, 2006. The case was eventually tried to a jury in April 2007, at the close of which Neville was found guilty of all the charged offenses. The trial court then sentenced Neville to maximum, consecutive prison terms, for a total of eighteen years imprisonment. *Page 3 
 {¶ 5} Neville timely appealed this decision. After reviewing the file, Neville's appellate attorney moved to withdraw, stating that he was unable to discover any prejudicial error. Neville was served with a copy of this motion and has not responded to it.
 {¶ 6} This court follows a well-established procedure when an attorney files a no-merit appellate brief and moves to withdraw as appellate counsel. See State v. Toney (1970), 23 Ohio App.2d 203; see alsoAnders v. California (1967) 386 U.S. 738. In Toney, this court set forth the procedure to be used when counsel of record determines an indigent's appeal is frivolous in its syllabus:
 {¶ 7} "3. Where a court-appointed counsel, with long and extensive experience in criminal practice, concludes that the indigent's appeal is frivolous and that there is no assignment of error which could be arguably supported on appeal, he should so advise the appointing court by brief and request that he be permitted to withdraw as counsel of record.
 {¶ 8} "4. Court-appointed counsel's conclusions and motion to withdraw as counsel of record should be transmitted forthwith to the indigent, and the indigent should be granted time to raise any points that he chooses, pro se.
 {¶ 9} "5. It is the duty of the Court of Appeals to fully examine the proceedings in the trial court, the brief of appointed counsel, the arguments pro se of the indigent, and then determine whether or not the appeal is wholly frivolous.
 {¶ 10} "6. Where the Court of Appeals makes such an examination and concludes that the appeal is wholly frivolous, the motion of an indigent appellant for the appointment of new counsel for the purpose of appeal should be denied.
 {¶ 11} "7. Where the Court of Appeals determines that an indigent's appeal is wholly frivolous, the motion of court-appointed counsel to withdraw as counsel of record should be allowed, and the judgment of the trial court should be affirmed." Id.
 {¶ 12} A review of the record reveals no pretrial error. The indictment stated all elements of the charged offenses. The State timely complied with Neville's discovery requests and provided Neville with a bill of particulars. Finally, Neville was brought to trial within the time required by R.C. 2945.71(C)(2). *Page 4 
 {¶ 13} The evidence introduced at trial strongly supports Neville's convictions on all counts. Neville was convicted of aggravated robbery with a firearm specification and violating a protection order. R.C.2911.01(A)(1) defines aggravated robbery as follows:
 {¶ 14} "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
 {¶ 15} The firearm specification applies if "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145(A).
 {¶ 16} A "theft offense" is, among other things, when a person knowingly obtains or exerts control over either the property or services of another either without the consent of the owner or person authorized to give consent or by deception, threat, or intimidation. R.C.2913.01(K)(1); 2913.02(A). A "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C.2923.11(A). A "firearm" is "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1).
 {¶ 17} R.C. 2919.27(A)(2) prohibits any person from "recklessly violating] the terms of * * * [a] protection order issued pursuant to section 2903.213 or 2903.214 of the Revised Code."
 {¶ 18} The first witness, Karen Hatcher, testified that she owned the store and was present with her daughter, her niece, and her cousin's friend at the time of the incident. According to Hatcher, a man walked in to buy a soft drink. As he was leaving, a Caucasian man in a mask and a black jacket robbed the store at gunpoint. Hatcher did not recognize the man, but could tell he wore glasses and had a mustache. During the robbery, the assailant talked to Hatcher's niece by her first name. After taking some *Page 5 
money, the man ran out the door and Hatcher's niece chased him. Afterward, the niece returned and spoke to the man who bought the soft drink. She said that she knew that the robber was the man's friend and the man identified the assailant as "Tommy Neville." Hatcher had her husband call the police, who arrived to the scene quickly.
 {¶ 19} Hatcher's niece, Kristie Dillard, was the clerk who was operating the store that night. She recognized the man who bought the soft drink as Jeff Beckwith, a man who lived in a house next door to the store. He was a regular customer who Dillard recognized. Dillard testified that Beckwith was acting "real fidgety." As he was leaving, a man with a mask came in the store and held a pistol to Dillard's forehead. Dillard could see that the man was Caucasian, wore glasses, had a mustache, and wore a mask and black coat. He demanded money from the register, which she gave to him. The man then ran and Dillard gave chase. She saw him run into Beckwith's home.
 {¶ 20} Dillard recognized the man as a friend of Beckwith's who had been living with Beckwith and had previously come into the store with Beckwith. Dillard had even carried on a conversation with the man in the recent past. Dillard had forgotten the man's name, but when she returned to the store Beckwith told her it was Tommy Neville.
 {¶ 21} Officer Justin Wright and his partner were the first police officers to arrive at the scene after the robbery. He spoke to Dillard who described the robbery, described the robber's appearance, identified him as Tom Neville, and told Officer Wright the home into which Neville had run. Officer Wright then called for backup and the police surrounded Beckwith's home. A woman in the home, Amy Desimone (who was Neville's girlfriend), opened up a window. Officer Wright asked Desimone if Neville was in the home and she said he was. Officer Wright then told Desimone to ask Neville to come outside. Neville came outside where he was arrested. Neville's arrest took place about five minutes after Officer Wright was first dispatched to the scene.
 {¶ 22} After Neville was taken away, Tiffany Herron, Beckwith's paramour and the woman who leased the home, consented to a search of the home. In the home, the police found a 40-caliber black handgun, a black coat, and a mask. The handgun was later test-fired and it was found operable. Upon coming back outside, Neville heard Desimone tell other officers that the money which had been stolen was well-hidden in her *Page 6 
pants. At the station, Desimone pulled the money from her pants upon request. It amounted to $229.00. Another officer testified that he heard Neville say that Beckwith was involved in the crime.
 {¶ 23} After Neville's arrest, officers checked his criminal history and discovered that Neville was subject to a protection order issued under R.C. 2903.213 from Clermont County, Ohio, which stated that Neville "shall not possess, use, carry, or obtain any deadly weapon." The description of Neville in the Clermont County record matched the defendant.
 {¶ 24} Later, police discovered a note directed toward Dillard promising payment if she did not testify against Neville. Neville had asked another inmate to deliver that letter to Dillard, but the other inmate told the police about the letter upon his release from jail. Officers took a handwriting sample from Neville and a forensic expert compared this with other samples of Neville's handwriting and determined that Neville wrote the note to Dillard.
 {¶ 25} Neville had Beckwith and Herron testify in his defense. Beckwith testified that Tom had been visiting for the holiday weekend. He then testified that he went to buy a soft drink from the store, but stated that he did not recognize the man who robbed the store. Beckwith denied identifying Neville as the assailant. On cross-examination, Beckwith was impeached with a prior statement he had given to police identifying the assailant as Neville.
 {¶ 26} Herron testified that she did not see Neville ever leave her home on the night of the robbery. According to Herron, she saw Neville sitting on her loveseat with Desimone immediately after the robbery and Neville was relaxed, watching television, and not out of breath. However, Herron was not in Neville's presence when the robbery took place.
 {¶ 27} These facts clearly proved all the elements of the offenses that Neville was charged with. Thus, there is no non-frivolous argument concerning the weight or sufficiency of the evidence. Moreover, there were no obviously prejudicial errors committed by the trial court during the course of the trial.
 {¶ 28} After the jury trial, the trial court immediately proceeded to sentencing, even *Page 7 
though Neville asked that a pre-sentence investigation be completed. The Ohio Supreme Court has held that a trial court need not order a pre-sentence report in a felony case when probation or a community control sanction is not granted. State v. Cyrus (1992),63 Ohio St.3d 164, syllabus; see also Crim.R. 32.2; R.C. 2951.03(A)(1). Since the trial court did not order probation or a community control sanctions, it did not err by proceeding immediately to sentencing.
 {¶ 29} The trial court ultimately sentenced Neville to maximum, consecutive sentences for a total imprisonment of eighteen years. At sentencing, the State pointed out that Neville had a "somewhat extensive" criminal history, which included a conviction for aggravated burglary for which Neville served a "significant" period of time in prison. Neville had also been charged with additional offenses, such as aggravated menacing, after his incarceration on the present charges. The trial court called Neville's criminal history "horrendous" when imposing sentence upon Neville.
 {¶ 30} The record shows that the trial court considered the sentencing factors in R.C. 2929.12, that the sentence imposed was within the statutory range, and that the sentence was reasonable given the statutory factors.
 {¶ 31} This review of the record confirms counsel's conclusion that there are no non-frivolous issues which Neville could argue on appeal. Accordingly, appellate counsel's motion to withdraw is granted and the judgment of the trial court is affirmed.
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1